UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WISCONSIN

MILWAUKEE INNER-CITY
CONGREGATIONS ALLIED FOR HOPE
(MICAH) and BLACK HEALTH
COALITION OF WISCONSIN,

    Plaintiffs,

    v.

MARK GOTTLIEB, in his official capacity as
Secretary of the Wisconsin Department of
Transportation; UNITED STATES
DEPARTMENT OF TRANSPORTATION;
ANTHONY FOXX,[1] in his official capacity as
Secretary of the U.S. Department of
Transportation; FEDERAL HIGHWAY
ADMINISTRATION; VICTOR MENDEZ, in
his official capacity as Administrator of the
Federal Highway Administration; and
GEORGE POIRIER, in his official capacity as
Division Administrator of the Wisconsin
Division Office of the Federal Highway
Administration,

    Defendants.

Case No. 3:12-cv-00556-lsa

SETTLEMENT AGREEMENT

The Parties to this action, Plaintiffs Milwaukee Inner-City Congregations Allied for Hope and the Black Health Coalition of Wisconsin (collectively, Plaintiffs), Federal Defendants United States Department of Transportation; the Federal Highway Administration; Anthony Foxx, in his official capacity as Secretary of the United States Department of Transportation; Victor Mendez,

---

[1] Pursuant to Fed. R. Civ. Proc. 25(d), Anthony Foxx, as the confirmed successor to the former Secretary Raymond LaHood, who was named as a defendant in his official capacity in this action, is automatically substituted as the proper party defendant.

1

in his official capacity as the Administrator of the Federal Highway Administration; and George Poirier, in his official capacity as Division Administrator of the Wisconsin Division Office of the Federal Highway Administration (collectively, Federal Defendants), and State Defendant Mark Gottlieb, in his official capacity as Secretary of the Wisconsin Department of Transportation, agree to the following Settlement Agreement in order to resolve this action and to avoid the need for further litigation before the Court.

WHEREAS Plaintiffs brought this litigation against Federal and State Defendant challenging the Federal Highway Administration's Record of Decision for the Zoo Interchange Project ("Project") located in Milwaukee County, issued on February 10, 2012, for alleged violations of the National Environmental Policy Act, 42 U.S.C. § 4321 *et seq*. Defendants deny the allegations in the Amended Complaint;

WHEREAS Plaintiffs filed a motion for a preliminary injunction. The Court made initial findings and recommendations in a May 10, 2013 Order, but did not enter a preliminary injunction, or otherwise enter any judgment. *See Milwaukee Inner-City Congregations Allied for Hope v. Gottlieb*, No. 12-C-0556 (W.D. Wis. 2013) (ECF No. 103);

WHEREAS the Parties held a settlement meeting and reached a tentative agreement on June 13, 2013, and read that tentative agreement into the Court record, acknowledging that such agreement was subject to further discussion and subject to approval by appropriate government officials. The Parties thereafter continued to pursue discussions regarding specific details of the agreement.

WHEREAS Plaintiffs contend that the current statutory and regulatory framework would likely require preparation of an environmental justice and/or indirect and cumulative effects

2

analysis as part of any proposal to expand or convert any part of the shoulder area (as referenced in Paragraph 7) to a mainline through traffic lane;

WHEREAS the Parties have reached the following agreement;

NOW THEREFORE, in the interest of the public, the Parties, and judicial economy, the Parties hereby stipulate and agree to the following:

1. The Wisconsin Department of Transportation agrees to provide funds not to exceed a total of $11.5 million ($11,500,000.00) of funds made available for the Project, payable as four (4) annual installments of $2.875 million ($2,875,000.00) to fund implementation of one or more new freeway flyer, business park flyer, or other bus routes from one or more locations in or readily accessible to the central city[2] of Milwaukee to one or more locations within western, northwestern, or southwestern Milwaukee County and/or any area within Waukesha and/or bordering parts of Washington Counties.

 a. Route(s) funded under Paragraph 1 will be designed to mitigate the effects of traffic congestion related to the construction of the Zoo Interchange Project within the Project Area, including those effects on central city.  Funding provided pursuant to Paragraph 1 cannot be used for maintenance of existing routes.   Plaintiffs and the Wisconsin Department of Transportation will work together in good faith to determine the exact route(s) and service times to be implemented with the funds described under Paragraph 1, and the route(s) selected shall be acceptable to Plaintiffs and to the Wisconsin Department of Transportation.

 b. Within two (2) years from the commencement date of any route(s) selected and funded under Paragraph 1(a), Plaintiffs and the Wisconsin Department of

---

[2] "Central city" refers to predominantly minority neighborhoods within the city of Milwaukee including zip code areas (in numeric but not priority order) 53205, 53206, 53208, portion of 53209 that is within the City of Milwaukee, 53210, 53212, 53216, 53218, and 53233.

Transportation will consult and evaluate the usage of the route(s) to determine whether usage levels are adequate to support continuation of the route(s) as mitigation. Plaintiffs and the Wisconsin Department of Transportation agree that a route may be modified or terminated if ridership is insufficient to support continuation of the route regarding mitigation. If a route is terminated due to insufficient ridership, Plaintiffs and the Wisconsin Department of Transportation shall work cooperatively to identify a replacement route or enhancements, alternatives, and/or additions to existing mitigation routes. Plaintiffs and the Wisconsin Department of Transportation share approval authority over any modifications, enhancements, or additions to existing mitigation routes, or the creation of new routes, which must be acceptable to both. Any modifications, additions, or enhancements to existing mitigation routes, or creation of new routes will be funded with funds described in Paragraph 1.

    2.    The Wisconsin Department of Transportation agrees to provide the Milwaukee County Transit System with a total payment of $ 2 million ($2,000,000.00) of funds made available for the project, payable as four (4) annual instalments of $500,000. The first installment of the funds identified in this paragraph will be available to the transit provider within ninety (90) days of the date on which the transit provider enters into a contractual agreement with the Wisconsin Department of Transportation for the receipt of such funds, as provided under Paragraph 3 of this Settlement Agreement.

        a.    The funds described in Paragraph 2 must be used to mitigate the effects of traffic congestion related to the Zoo Interchange Project by increasing transit use with funds described under Paragraph 1. These mitigation measures may include public outreach, engagement and marketing. Any such mitigation measures funded pursuant to Paragraph 2 will only be implemented with agreement from the transit provider. The Wisconsin Department of

4

Transportation will write a contract with the transit provider for use of the funds.  This does not prohibit the transit provider from subcontracting with other parties provided any such subcontract is compliant with any State and Federal requirements for use of highway funds.

      b.      Plaintiffs and the Wisconsin Department of Transportation will work together in good faith to determine the nature of the mitigation actions under Paragraph 2. Mitigation actions utilizing the funds under Paragraph 2 will be identified within twelve (12) months after filing this Settlement Agreement with the Court, with time to be extended for good cause shown.  Plaintiffs and the Wisconsin Department of Transportation share approval authority of any mitigation action(s) related to how the funds in Paragraph 2 will be utilized. Any mitigation action(s) provided under Paragraph 2 are subject to the review for effectiveness as described in Paragraph 1(b).

3.      Notwithstanding the provisions in this Settlement Agreement, all payments of funds authorized by Paragraphs 1 and 2 for routes and mitigation measures will be made directly to the transit provider implementing the route(s) and or mitigation measures.  The Wisconsin Department of Transportation shall not release any funds issued under this Settlement Agreement to the transit provider until the transit provider enters into a contractual agreement with the Department of Transportation for receipt of such funds.  The Wisconsin Department of Transportation is responsible only for actual expenses accrued based on invoices submitted by the transit provider to the Wisconsin Department of Transportation.  All routes and mitigation measures must be approved and agreed to by the transit provider.

4.      The Parties agree that the transit service contemplated in Paragraphs 1 and 2 is a key provision of this agreement and State Defendants agree to make good faith efforts within their authority to ensure that those provisions are implemented.

5. Except in the event of a reduction or lapse in funding for the Zoo Interchange Project, as described in Paragraph 16 below, or a Force Majeure event, as described in Paragraph 17 below, that results in a extension of the time period of construction for the Zoo Interchange Project past the end of the 2018 calendar year, all funds identified and provided under Paragraphs 1 and 2 of this Settlement Agreement must be expended prior to October 1, 2018.  Funds not planned for expenditure by March 1, 2018, and set to be expended by October 1, 2018, will be forfeited.  The Wisconsin Department of Transportation will inform Plaintiffs of any such designation on or before April 1, 2018.  For the purposes of this Paragraph, "expended" is defined as expenses that have been incurred by the transit provider even if they have not yet been paid by the Wisconsin Department of Transportation.

6. Upon completion of the Zoo Interchange Project, the Wisconsin Department of Transportation will ensure the final striping of the eighteen (18)-foot inside shoulder used during construction and located on Interstate-94 eastbound and westbound through the Zoo Interchange will preclude the use of the shoulder as a travel lane, except in emergency situations.  The striping will be in accordance with the Manual on Uniform Traffic Control Devices (MUTCD) and consist of an eighteen (18) foot striped area including a standard twelve (12)-foot inside shoulder and a six (6)-foot area (used during construction).

7. To the extent required by law, the Wisconsin Department of Transportation agrees to prepare an environmental review pursuant to applicable law, including to the extent then applicable, an environmental justice and/or indirect and cumulative effects analysis, of any future proposal to expand or convert any part of the shoulder area, as described in Paragraph 6, into a mainline thru traffic lane.  The Wisconsin Department of Transportation agrees to provide Plaintiffs' attorneys with notice of such environmental review, and agrees to permit Plaintiffs,

6

which shall not include their counsel in lieu of Plaintiffs, to participate in the analysis of environmental justice and indirect and cumulative effects, if such analyses are required by law. For example, if interviews are done, or working groups formed, Plaintiffs will be invited to participate.  Participation in the process does not guarantee an outcome nor does it require the Wisconsin Department of Transportation to agree with or obtain concurrence or approval of the participants.

8. State Defendants agree to follow all requirements under the Wisconsin Open Records Act, Wis. Stats. § 19.35, in processing Plaintiffs' July 11, 2013 records request submitted electronically to the Secretary of the Wisconsin Department of Transportation.

9. Federal Defendants agree to pay the lump sum total of eighty thousand dollars ($80,000.00) in full and complete satisfaction of any and all claims, demands, rights, and causes of action pursuant to any statute and/or common law theory Plaintiffs may have had for all attorneys' fees and costs incurred by Plaintiffs in this litigation.

10. Federal Defendants' payment, as identified in Paragraph 9 above, shall be accomplished by Federal Defendants making one electronic funds transfer to Plaintiffs through the ACLU of Wisconsin Foundation, in accordance with information that Plaintiffs provide to Federal Defendants.  Federal Defendants agree to submit all necessary paperwork to the appropriate office within thirty (30) calendar days after filing this Settlement Agreement with the Court or receiving all information from Plaintiffs that is required to facilitate payment, whichever is later.

11. Plaintiffs agree that receipt of the payment amount referenced in Paragraph 9 by the ACLU of Wisconsin Foundation shall operate as a release of any and all claims for attorneys'

fees and costs that Plaintiffs may seek to pursue in this matter relating to the litigation or settlement.

12. Plaintiffs' counsel agrees to send confirmation of the receipt of the payment to counsel for Federal Defendants within fourteen (14) days of such payment.

13. All obligations regarding the payment referenced in Paragraph 9 shall terminate upon Federal Defendants' payment referenced in Paragraph 9 and Plaintiffs' notice referenced in Paragraph 11.

14. Plaintiffs agree that the proper entity to receive payment pursuant to this Settlement Agreement is the ACLU of Wisconsin Foundation.  Once Federal Defendants have made the payment, Plaintiffs are solely responsible for any further apportionment of that payment.  All Plaintiffs and Plaintiffs' counsel agree to hold Federal Defendants harmless from any liability for attorneys' fees, costs, expenses, or other claims that might be made as to the payment of the agreed-upon amount or any apportionment of the payment made.

15. <u>Remedy For Non-Compliance</u>:  If any Party(ies) believes that the other Party(ies) has failed to comply with the terms of this Settlement Agreement in any material respect, the alleging Party(ies) shall promptly notify the other Party(ies) in writing of the alleged non-compliance.  Such notice shall include a description of the alleged non-compliance, documentation of the alleged non-compliance, an explanation of why any alleged non-compliance is believed to be material, and any proposals for resolving the alleged non-compliance.  Failure to include the above information in a notice of non-compliance shall not constitute proper notice and be deemed ineffective.  The provisions in this Paragraph 15 shall not apply to situations where there is a reduction or delay in funding of the Zoo Interchange Project or in the event of a Force Majeure event, as described in Paragraphs 16 and 17, respectively.

    a. The Parties agree that representatives designated by the Parties shall meet to discuss a notice of non-compliance submitted pursuant to Paragraph 15.  The Parties agree to use good faith efforts to schedule a meeting within thirty (30) days of receipt of the notice of non-compliance.  All meetings held pursuant to this Paragraph shall include at least one non-attorney representative of each Party, and may include the Parties' counsel.

    b. The Parties shall use good faith efforts to resolve any dispute regarding alleged non-compliance.  If the Parties are unable to resolve a dispute regarding non-compliance through informal dispute resolution despite their good faith efforts within ninety (90) days of the meeting scheduled pursuant to Paragraph 15(a) (unless the Parties agree to an extension), then the Party(ies) alleging the non-compliance may file a motion with the United States District Court for the Western District of Wisconsin, seeking to enforce the relevant term(s) and provision(s) of this Settlement Agreement.

  16. <u>Remedy For Reduction or Lapse in Funding</u>:  For purposes of managing a reduction or lapse in funding of the Zoo Interchange Project, the Parties acknowledge and agree that the Wisconsin Department of Transportation is bound by its statutory authority as prescribed by the Wisconsin State Legislature, and may expend funds only as specifically authorized by the Wisconsin State Legislature.  The Parties also acknowledge and agree that at the time of the execution of this Settlement Agreement, the Wisconsin Department of Transportation is authorized to proceed with the Zoo Interchange Project construction for the 2013-2015 Biennium.  Accordingly, pursuant to the Environmental Impact Statement prepared for the Zoo Interchange Project, the Wisconsin Department of Transportation is authorized to provide traffic congestion mitigation.  Pursuant to funding for construction of the Zoo Interchange Project, the Wisconsin Department of Transportation is authorized to provide the annual installments of

9

$2,875,000 for routes described under Paragraph 1 for the years 2014 and 2015, and $500,000 for mitigation measures described under Paragraph 2 for the years 2014 and 2015, for the current Biennium.

    a.    In the event of a reduction or lapse in funding of the Zoo Interchange Project that precludes the Wisconsin Department of Transportation from fully meeting its obligations under Paragraphs 1 and 2 of this Settlement Agreement, the Wisconsin Department of Transportation shall notify Plaintiffs orally within ten (10) business days of the onset of the reduction or lapse in funding. The oral notification shall be followed by written notification to be sent within fourteen (14) business days of the onset of the reduction or lapse in funding. Any written notification of a reduction or lapse in funding shall include a detailed description of the modifications made to this Settlement Agreement pursuant to Paragraph 16(b).

    b.    In the event of a reduction in funding, the Wisconsin Department of Transportation will make the following modifications to its obligations under Paragraphs 1 and 2 in order to maintain the Settlement Agreement to the fullest extent possible:

    i.    In the event that funding for the Zoo Interchange Project is reduced for the 2013-2015 Biennium, or any future Biennium, funds provided under Paragraphs 1 and 2 of this Settlement Agreement will be reduced by a percent equal to the percent reduction of funds for the Project. The percent reduction will be determined as a reduction from the amount of funds the Wisconsin Department of Transportation finally and formally sought for the construction of the Zoo Interchange Project.[3] The reduction in funds will be spread out equally between each year of the affected Biennium. For example, if in any Biennium funding for the

---

[3] This shall mean the amount sought by the Secretary of the Wisconsin Department of Transportation in the budget proposal submitted to the Governor as part of the Biennium budget process.

Zoo Interchange Project is reduced by fifty (50) percent, then the amount of funds described in Paragraphs 1 and 2 will be reduced by fifty (50) percent with the reduction spread equally between each year of the affected Biennium.

    ii.  If a reduction in funding requires the Wisconsin Department of Transportation to extend the time period of construction for the Zoo Interchange Project past the end of the 2018 calendar year, the time to expend the funds provided under Paragraphs 1 and 2 will be modified commensurate with the extension of time for construction.  The expenditure of any remaining funds available under Paragraphs 1 and 2 shall be planned for no later than ten (10) months prior to the anticipated completion of construction, and must be expended no later than three (3) month prior to the anticipated completion of construction.  "Expended" is defined as in Paragraph 5.  This provision provides for consistency of timing of expenditure of funds pursuant to Paragraph 5 of this Settlement Agreement.

    iii.  In the event of a lapse in funding of the Zoo Interchange Project, the Wisconsin Department of Transportation is relieved of its obligations to provide funds described under Paragraphs 1 and 2 of this Settlement Agreement until funding for the Zoo Interchange Project is restored.

    iv.  Regardless of any reduction or lapse in funding, or any event that results in an extension of time to complete construction of the Zoo Interchange Project, the Wisconsin Department of Transportation shall not expend or pay an annual amount of funds that exceeds the original annual amounts of funds provided in Paragraphs 1 and 2.

    v.  In the event of a reduction or lapse in funding for the Zoo Interchange Project, Plaintiffs and the Wisconsin Department of Transportation will work together in good faith to determine what, if any, modifications or terminations to existing routes

or mitigation measures funded with funds described in Paragraphs 1 and 2 will be required.  In the event of a lapse in funding for the Zoo Interchange Project, Plaintiffs and the Wisconsin Department of Transportation will work together in good faith to re-establish routes or mitigation measures according to the limitations established in Paragraphs 1 and 2 once funding is restored.

      vi.      If Plaintiffs dispute Defendants' claim of a reduction or lapse in funding, modification of the Settlement Agreement in response to a reduction or lapse in funding. Plaintiffs shall proceed in the manner specified in Paragraph 15.

    17.    <u>Force Majeure</u>.  The Parties agree:

      a.      "Force Majeure," for the purposes of this Settlement Agreement, is defined as any event arising from causes beyond the control of Defendants which prevents the performance of any obligation under this Settlement Agreement despite Defendants' best efforts to fulfill the obligation.  Such events may include natural disasters, acts of war, as well as all unavoidable legal impediments or prohibitions.  Such events do not include a reduction or lapse in funding of the Zoo Interchange Project as described under Paragraph 16.  In the case of a Force Majeure event, Defendants shall be relieved of those specific obligations directly precluded by the Force Majeure event, as well as those other obligations whose performance is precluded by the inability to perform the directly precluded obligations.

      b.      In the event of a Force Majeure event that results in the termination or abandonment of the Zoo Interchange Project, whether due to defunding of the Project or other event, and Defendants are precluded from obligating or paying the sum of money set forth in Paragraphs 1 and/or 2 above (or, if applicable, as modified under Paragraph 16), this Settlement Agreement shall be deemed null, void, and unenforceable.

      c.     If a Force Majeure event occurs or has occurred that may prevent the performance of any obligation under this Settlement Agreement, Defendants shall follow notification procedures as set forth under Paragraph 15(a).

      d.     Within thirty (30) days of written notification of the Force Majeure event (unless the Parties agree to an extension), the Parties shall first meet and confer in good faith to informally resolve such a dispute. In the event that such informal efforts fail, the Parties may request the assistance of the Court or a party designated by the Court in resolving the dispute. Any proceedings before the Court or party designated by the Court shall be commenced as expeditiously as possible.

18.    Within thirty (30) days of signing this Settlement Agreement, the parties will request that the Court administratively close the case, subject to reopening on motion for good cause limited to a Paragraph 17—Force Majeure event.

19.    Unless the case has been reopened pursuant to Paragraph 18, Plaintiffs will file a voluntary dismissal of the case with prejudice within ten (10) business days of being notified by counsel for the Wisconsin Department of Transportation that construction on the Zoo Interchange Project is complete. The parties agree that upon dismissal, the case shall not be subject to reopening for any reason. To the extent not already terminated, filing of the voluntary dismissal shall terminate all obligations and duties under this Settlement Agreement.

20.    Except as provided for in Paragraph 17, Plaintiffs, including their officers, agents, employees and assigns, and anyone in active concert or participation with them, in consideration of the undertakings expressed in this Settlement Agreement, hereby release and forever discharge the United States of America and the State of Wisconsin, and all of their agencies, instrumentalities, subdivisions, employees and officers thereof, from any and all claims which

have been asserted or which could have been asserted against the United States or the State of Wisconsin arising out of the Zoo Interchange Project.

21. The parties agree that the Settlement Agreement will become effective upon filing of the Settlement Agreement with the Court.

22. This Settlement Agreement is a result of a compromise and settlement and does not represent an admission by any Party to any fact, claim or defense for any issue in this lawsuit.

23. The Parties agree that this Settlement Agreement has no precedential value.

24. The Parties agree that this Settlement Agreement or any of its terms shall not be used or cited as evidence in any administrative or court proceeding, except as necessary for the Court to interpret the nature and content of or enforce its terms pursuant to Paragraphs 15 and 16.

25. Nothing in the terms of this Settlement Agreement limit the United States Department of Transportation, the Federal Highway Administration, or the Wisconsin Department of Transportation's authority to make future decisions affecting the Zoo Interchange Project Area except as such limitations are contained herein.

26. Nothing in the terms of this Settlement Agreement shall be construed to limit or deny the power of a federal or Wisconsin state official to promulgate or amend regulations.

27. No provision of this Settlement Agreement shall be interpreted as or constitute a commitment or requirement that the United States Department of Transportation or the Federal Highway Administration obligate or pay funds in violation of the Anti-Deficiency Act, 31 U.S.C. § 1341, or any other applicable appropriations law.

28. The undersigned representatives of the Parties certify that they are fully authorized by the respective Parties who they represent to enter into the terms and conditions of this Settlement Agreement and to legally bind such Parties to it.

29. This Settlement Agreement represents the entirety of the Parties' commitments with regard to settlement. The Parties agree that any other prior or contemporaneous representations or understandings not expressly stated in this Settlement Agreement, whether written or oral, have no legal or equitable force or effect.

IT IS HEREBY AGREED:

FOR PLAINTIFFS:

DATED: May 19, 2014.

*[signature]*
KARYN L. ROTKER (WI Bar No. 1007719)
Am. Civil Liberties Union of Wisconsin Found.
207 East Buffalo Street, Suite 325
Milwaukee, WI 53202
Tel: (414) 272-4032 / Fax: (414) 272-0182
krotker@aclu-wi.org

DENNIS M. GRZEZINSKI (WI Bar No. 1016302)
Midwest Environmental Advocates
1845 N. Farwell Avenue, Suite 202
Milwaukee, WI 53202
Tel: (414) 455-0739 / Fax: (414) 455-0744
dennisg@midwestadvocates.org

DATED: May 15, 2014

*[signature]*
REVEREND WILLIE BRISCO, President
Milwaukee Inner-City Congregations Allied for Hope

DATED: may 19, 2014

*[signature]*
PATRICIA McMANUS, Ph.D., R.N., President and CEO
Black Health Coalition of Wisconsin, Inc.

*Additional signature on next page.*

15

FOR STATE DEFENDANT:

DATED: May 13, 2014.

ABIGAIL C. S. POTTS (WI Bar No. 1060762)
Assistant Attorney General
Wisconsin Department of Justice
P.O. Box 7857
Madison, WI 53707-7857
Tel: (608) 267-7292 / Fax: (608) 267-2223
pottsac@doj.state.wi.us


FOR FEDERAL DEFENDANTS:

SAM HIRSCH
Acting Assistant Attorney General
Environment & Natural Resources Division

DATED: MAY 29, 2014.

JULIA S. THROWER (CA Bar No. 253472)
Trial Attorney
United States Department of Justice
Environment & Natural Resources Division
301 Howard Street, Suite 1050
San Francisco, CA 94105
Tel: (415) 744-6566 / Fax: (415) 744-6476
julie.thrower@usdoj.gov

16